J-A20029-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARELL DEISEAN WALKER | : | |
| | : | |
| Appellant | : | No. 1177 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 2, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000255-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARELL D. WALKER | : | |
| | : | |
| Appellant | : | No. 1178 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 2, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0005246-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARELL DEISEAN WALKER | : | |
| | : | |
| Appellant | : | No. 1179 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 2, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0005247-2016

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    FILED JANUARY 08, 2021

Appellant, Darell Deisean Walker, appeals from the judgment of sentence entered on July 2, 2019, following his jury trial convictions in the Criminal Division of the Court of Common Pleas of Westmoreland County. We affirm.

The facts and procedural history of this case are as follows. In late 2016, the Commonwealth charged Appellant with various offenses relating to his sexual assault of two female victims, K.B. and A.D. On December 28, 2017, Appellant filed an omnibus pre-trial motion which included, inter alia, a motion to suppress incriminating statements made by Appellant and a motion to dismiss pursuant to Pa.R.Crim.P. 600. The trial court convened a hearing on Appellant's omnibus pre-trial motion on May 17, 2018. The next day, the trial court denied Appellant's motion to suppress and Rule 600 motion to dismiss.

Appellant's consolidated jury trial commenced on April 1, 2019. The trial court summarized the relevant trial testimony as follows.

> During trial, both [K.B.] and [A.D.] testified regarding their involvement with [Appellant]. [K.B.] testified that in the fall of 2016, she was [13-years-old], and she lived in Greensburg[, Pennsylvania] with her mother, her mother's boyfriend, and her sisters. [K.B.] stated that in 2016, she received a friend request from [Appellant] on Instagram and[,] after accepting it, she and [Appellant] began talking. [K.B.] testified that on one occasion in the fall of 2016 when [she] was still 13[-]years[-]old, she asked [Appellant] to come over to her house. [K.B.] alleged that [Appellant] drove to her house, and they had [sexual intercourse] in [Appellant's] vehicle which was parked in the alley behind her house. ... On a second occasion in the fall of 2016, [K.B.] testified

that she asked [Appellant] to come over to her house, and they had [sexual] intercourse in her bathroom. [K.B.] testified that the night before she ran away from home, [Appellant] came over, gave her [marijuana], and [Appellant] put his penis in her mouth, and she performed oral sex. [K.B.] confirmed that the messages that she exchanged with [Appellant] all occurred when she was [13-years-old].

[A.D.] also testified at trial regarding her involvement with [Appellant]. [A.D.] testified that in the summer of 2016, she was 14[-]years[-]old and lived in Greensburg[, Pennsylvania] with her mother, her mother's boyfriend, and her brother. [A.D.] testified that she met [Appellant] through her ex–boyfriend[.] [A.D.] testified that[, after they met,] she and [Appellant] began [text messaging one another.] On one occasion, [A.D.] testified that she performed oral sex on [Appellant], and they engaged in [sexual intercourse] in [Appellant's] vehicle which was parked in the alley in the back of her house. [A.D.] also testified that on a different occasion, she had similar contact with [Appellant] at [Appellant's] home.

[Appellant] also elected to testify at trial. [Appellant] testified that he met [K.B.] on Instagram when he sent her a friend request. [Appellant] stated that when he first started talking to [K.B., she] told him she was 18[-]years[-]old. [Appellant] testified that they began to talk on Facebook, and then they eventually met in person in 2016. During their first in-person encounter, [Appellant] testified that [K.B.] invited him over and they watched a movie for a little bit, and then he left. On the second occasion, [Appellant] testified that [K.B.] came to his car and while they were in his car, [K.B.] performed oral sex on him and they ended up having sexual intercourse. On the third occasion, [Appellant] stated that he and [K.B.] had sexual intercourse in [K.B.'s] bathroom. [Appellant] testified that he was unaware that [K.B.] was an underage minor until after these encounters occurred and he learned that she was missing. [Appellant] indicated that he met [A.D.] in[-]person though [a] friend[.] [Appellant] testified that he did [know] how old [A.D.] was, but he had no reason to believe that she was underage. [Appellant] testified that on the first occasion that he met with [A.D] alone, he went to [A.D.'s] home and she got into his car and they had sexual intercourse. On two other occasions, [Appellant] stated that [A.D.] invited him over to her [grandmother's] house and then [her] house[.]

> [Appellant] testified that all of these events occurred in 2016 when he was [21-years-old].

Trial Court Opinion, 11/4/19, at 3-5 (internal citations omitted).

On April 4, 2019, the jury convicted Appellant of the following offenses.[1] Under docket number CP-65-CR-0000255-2017 (hereinafter, "Docket 255-2017"), the jury convicted Appellant of three counts of statutory sexual assault[2] and corruption of a minor.[3] Under docket number CP-65-CR-0005246-2016 (hereinafter, "Docket 5246-2016") the jury convicted Appellant of involuntary deviant sexual intercourse ("IDSI") with a person less than 16 years old;[4] aggravated indecent assault of a complainant less than 16 years old;[5] indecent assault of a person less than 16 years old;[6] and statutory sexual assault. Under docket number CP-65-CR-0005247-2016 (hereinafter, "Docket 5247-2016"), the jury convicted Appellant of unlawful contact with a minor;[7] corruption of a minor; possession of a controlled

_____

[1] The jury acquitted Appellant of all charges for the crimes docketed at CP-65-CR-0000253-2017. See Trial Court Opinion, 11/4/19, at 6, n.3.

[2] 18 Pa.C.S.A. § 3122.1(a)(1).

[3] 18 Pa.C.S.A. § 6301(a)(1)(ii).

[4] 18 Pa.C.S.A. § 3123(a)(7).

[5] 18 Pa.C.S.A. § 3125(a)(8).

[6] 18 Pa.C.S.A. § 3126(a)(8).

[7] 18 Pa.C.S.A. § 6318(a)(1).

- 4 -

substance: marijuana;[8] and possession of drug paraphernalia.[9]  On July 2, 2019, the trial court sentenced Appellant to an aggregate sentence of eight and one-half to 17 years' incarceration followed by five years' probation. Appellant "was also subjected to a lifetime registration under [the Sexual Offender Registration Notification Act [("SORNA")]."  Trial Court Opinion, 11/4/19, at 7.

On July 31, 2019, Appellant filed a single notice of appeal for all three docket numbers.[10]  On September 20, 2019, this Court consolidated

_____

[8] 35 P.S. § 780-113(a)(31).

[9] 35 P.S. § 780-113(a)(32).

[10] Pursuant to Pa.R.A.P. 1925(b)(1), on August 6, 2019, the trial court entered an order directing Appellant to "file . . . a concise statement of errors complained of on appeal" within 21 days.  Trial Court Order, 8/6/19, at 1.  The order also mandated that Appellant "serve a copy of [the] statement" to the trial court.  Id.  Thereafter, Appellant filed a motion for an extension of time to file his concise statement.  The trial court granted Appellant's motion and ordered him to "file his Rule 1925(b) statement by October 26, 2019."  Trial Court Order, 8/27/19, at 1.  In its Pa.R.A.P. 1925(a) opinion, the trial court states that Appellant "filed [his 1925(b)] statement" on October 25, 2019.  Trial Court Opinion, 11/4/19, at 7.  Appellant's concise statement, however, is not included within the certified record.  In addition, a review of the trial court's docket reveals that no concise statement was filed.  "It is well-settled that an appellant's failure to comply with a trial court's Rule 1925(b) [o]rder results in a waiver of all issues on appeal."  Commonwealth v. Chester, 163 A.3d 470, 472 (Pa. Super. 2017) (citation omitted).  When a Rule 1925(b) order is entered, however, "the clerk of courts must furnish copies of the order to the parties and record the date of service of the order in the docket pursuant to Pa.R.Crim.P. 114."  Id.  Pa.R.Crim.P. 114 mandates that the clerk enter the order "promptly" on the docket, and that the docket entry contain, inter alia, "the date of service of the order or court notice."  Pa.R.Crim.P. 114(C).  A review of the entries at Docket 255-2017, Docket 5246-2016, and Docket

Appellant's appeals sua sponte and issued a rule to show cause why the appeal should not be quashed pursuant to our Supreme Court's decision in Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018). On September 25, 2019 counsel for Appellant responded to the rule to show cause. In his response, Appellant's counsel acknowledged that he failed to file three separate notices of appeal. Response to Rule to Show Cause, 9/25/19, at *1 (un-paginated). Counsel, however, argued that, because this case "involve[d] a single [Appellant] with similar issues at each docket" and this Court "would [have] consolidated [the case] into one appeal, regardless of separate filings" Appellant's appeal was distinguishable from Walker. Id. Therefore, counsel requested that this Court reach the merits of Appellant's appeal or, in the alternative, "grant Appellant leave of [c]ourt to file three separate [n]otices of [a]ppeal nunc pro tunc, given the circumstances of this case." Id. at *2. On October 22, 2019, this Court discharged the rule to show cause by per curiam order and permitted the appeal to continue with the proviso that the ruling was not a binding, final determination and that the panel assigned to address the merits of the appeal could further address the Walker issue.

_____

5247-2016 reveals that there is no notation that the original Rule 1925(b) order or the trial court's order granting Appellant's motion for an extension was forwarded to Appellant's counsel, nor any indication of the date upon which service supposedly occurred. "Based upon the lack of recordation in the docket, we are unable to determine the date of service of the [o]rder[s], as required under Criminal Rule 114, and cannot conclude that [Appellant] failed to comply with the [] court's directive to file a concise statement." Chester, 163 A.3d at 472. As such, we decline to find Appellant's claims waived on this basis.

Hence, before we consider the merits of Appellant's claim, we first determine whether this appeal is properly before us. As this Court previously explained:

Pennsylvania Rule of Appellate Procedure 341(a) directs that "an appeal may be taken as of right from any final order of a government unit or trial court." Pa.R.A.P. 341(a). "The Official Note to Rule 341 was amended in 2013 to provide clarification regarding proper compliance with Rule 341(a)...." [Walker, 185 A.3d at 976]. The Official Note now reads:

Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal[] must be filed. Commonwealth v. C.M.K., 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).

Pa.R.A.P. 341, Official Note.

In Walker, our Supreme Court construed the above-language as constituting "a bright-line mandatory instruction to practitioners to file separate notices of appeal." Walker, 185 A.3d at 976-[9]77. Therefore, the Walker Court held that "the proper practice under Rule 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket. The failure to do so requires the appellate court to quash the appeal." Id. at 977. However, the Court tempered its holding by making it prospective [and applicable only to appeals filed after June 1, 2018], recognizing that "[t]he amendment to the Official Note to Rule 341 was contrary to decades of case law from this Court and the intermediate appellate courts that, while disapproving of the practice of failing to file multiple appeals, seldom quashed appeals as a result." Id. Accordingly, the Walker Court directed that "in future cases Rule 341 will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." Id.

Commonwealth v. Williams, 206 A.3d 573, 575–576 (Pa. Super. 2019) (emphasis in original). Because Appellant filed his notice of appeal on July 31, 2019, the rule announced in Walker governs. As stated above, Appellant filed a single notice of appeal listing all three docket numbers, rather than three separate notices of appeal at each trial court docket. As such, Appellant violated our Supreme Court's mandate in Walker and this appeal is subject to quashal.

This Court, however, in Commonwealth v. Stansbury, 219 A.3d 157 (Pa. Super. 2019), declined to quash an appeal listing two docket numbers because the trial court misinformed Stansbury that he could file a single notice of appeal. Indeed, we determined that the trial court's failure to advise Stansbury properly regarding his appellate rights amounted to a "breakdown in the court system" and, accordingly, we excused his failure to comply with Walker. Stansbury, 219 A.3d at 160. Notably, this holding in Stansbury was recently reaffirmed by an en banc panel of this Court. See Commonwealth v. Larkin, 235 A.3d 350, 354 (Pa. Super. 2020) (en banc) (holding that, because the trial court's order informed Larkin that he had "[30] days from the date of [the] order to file an appeal" a breakdown in the court system occurred which excused non-compliance with Walker) (emphasis in original). Thus, based upon both Stansbury and Larkin, "we may overlook the requirements of Walker where [] a breakdown occurs in the court system, and a defendant is misinformed or misled regarding his appellate rights." Larkin, 235 A.3d at 354.

Here, our review of the record reveals a scenario similar to that presented in Larkin and Stansbury. Indeed, during Appellant's sentencing hearing on July 2, 2019, the trial court explained his appellate rights as follows.

> You have two choices as far as your appeal. You can file a direct appeal to the Superior Court, which must be filed within 30 days from today's date, and it must be in writing. [Appellant's trial counsel] will continue [to represent] you on direct appeal. If you fail to file an appeal, any errors which may have occurred during your trial or any complaints that you may have about your sentence which I imposed will be lost forever[.]

N.T. Sentencing Hearing, 7/2/19, at 21 (emphasis added). The trial court therefore "utilized the singular" when it advised Appellant to file an appeal even though "Walker required that Appellant file separate notices of appeal at each docket number." Stansbury, 219 A.3d at 160. Accordingly, the trial court misinformed Appellant regarding his appellate rights and a breakdown in the court system occurred which permits us to overlook the requirements of Walker. As such, we decline to quash the instant appeal.

Appellant raises the following issues on appeal:

I. Did the Commonwealth introduce sufficient evidence to sustain the sex offense convictions by the jury verdict at these three consolidated cases?

II. Did the [trial] court abuse [its] discretion by denying [Appellant's] [m]otion to [s]uppress[?]

III. Did the trial court abuse [its] discretion by denying [Appellant's] [Pa.R.Crim.P.] 600 [m]otion to [d]ismiss?

Appellant's Brief at 6.

In Appellant's first issue, he contends that the evidence was insufficient to support his convictions. Appellant specifically argues that the Commonwealth failed to produce sufficient evidence to support his convictions for: IDSI, aggravated indecent assault, statutory sexual assault, and corruption of a minor. Upon review, we conclude that this issue is waived.

This Court has previously explained that Pa.R.A.P. 2119 compels a finding of waiver "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review[.]" Tosi v. Kizis, 85 A.3d 585, 589 n.6 (Pa. Super. 2014) (citation omitted). "[W]e decline to become the appellant's counsel. When . . . briefs are wholly inadequate to present specific issues for review, [this] Court will not consider the merits thereof." Branch Banking & Trust v. Gesiorski, 904 A.2d 939, 942–943 (Pa. Super. 2006) (internal alteration and citation omitted).

In the argument section of his brief devoted to this issue, Appellant, aside from citing some of the relevant sections of the Criminal Code, fails to support his claims with pertinent precedent or explain how the evidence was insufficient to support his convictions. With regard to his convictions for IDSI and aggravated indecent assault, Appellant simply claims that

> [t]he fact that [K.B.] could not pinpoint the dates of the alleged crimes is insufficient evidence that they occurred as charged.

Appellant's Brief at 11. Further, concerning his convictions for statutory sexual assault and corruption of a minor, Appellant states that

> [i]t was not proven by the Commonwealth that [Appellant] was not mistaken and misled about [A.D.'s] age. [A.D.] also could not remember the exact dates of the sexual encounters with [Appellant].

Id. at 12. Thus, Appellant's "argument" consists of three sentences and is nothing more than a bald assertion without any analysis. We therefore conclude that this issue is waived.[11] See Wirth v. Commonwealth, 95 A.3d 822, 837 (Pa. 2014) (holding that "[w]here an appellate brief fails to … develop an issue in any [] meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's argument for him.") (internal quotations omitted).

In his second issue, Appellant argues that the court erred in dismissing his motion to suppress. Likewise, in his third issue, Appellant claims that the trial court erred in denying his motion to dismiss filed pursuant to Pa.R.Crim.P. 600. Both of these motions were included in Appellant's omnibus pre-trial

_____

[11] Even if Appellant did not waive this issue on appeal, we would conclude that the evidence was sufficient to sustain his convictions. We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable Christopher A. Feliciani. We conclude that Appellant is not entitled to relief in this case and that Judge Feliciani's November 4, 2019 opinion accurately disposes of Appellant's challenge to the sufficiency of the evidence on appeal. Therefore, we affirm on the basis of Judge Feliciani's opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Feliciani's November 4, 2019 opinion.

motion filed December 28, 2017. The trial court convened a hearing for argument on Appellant's motion on May 17, 2018. Appellant, however, never requested that the transcripts from this proceeding be prepared. This Court previously explained:

> The fundamental tool for appellate review is the official record of the events that occurred in the trial court. To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. … Simply put, if a document is not in the certified record, the Superior Court may not consider it.
>
> Commonwealth v. Preston, 904 A.2d 1, 6-7 (Pa. Super. 2006) (citations omitted). "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." Id. at 7; see also Pa.R.A.P. 1911(d) (stating that "[i]f the appellant fails to take the action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal."). Thus, the failure by an appellant to ensure that the original record for appeal contains sufficient information to conduct a proper review constitutes a waiver of the issues sought to be examined. Id.

Commonwealth v. Chilcote, 2020 WL 2617032, at *5 (Pa. Super. May 22, 2020). As Appellant failed to ensure that the transcripts from the May 17,

2018 hearing on his motion to suppress[12] and motion to dismiss[13] were prepared and included in the certified record, we conclude that his final two issues are waived.[14]

_____

[12] We note that, with regard to a claim that a trial court erred in denying a motion to suppress, our "scope of review . . . is limited to the evidence presented at the suppression hearing." Commonwealth v. Shreffler, 201 A.3d 757, 758 n.3 (Pa. Super. 2018). Thus, Appellant's failure to include the transcripts of the May 17, 2018 hearing on appeal is especially fatal to his claim that the trial court erred in denying his motion for suppression. See Commonwealth v. Gillen, 798 A.2d 225, 229 (Pa. Super. 2002) (explaining that the appellant waived his challenge to the suppression court's ruling because he failed "to provide [this Court] with the necessary [suppression] transcript").

[13] Even if Appellant did not waive his speedy trial issue, we would still conclude that he is not entitled to relief. Pa.R.Crim.P. 600(A)(2)(a) mandates that "in a court case in which a written complaint is filed against the defendant[, trial] shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). This Court has explained

> the courts of this Commonwealth employ three steps in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

Commonwealth v. Bethea, 185 A.3d 364, 371 (Pa. Super. 2018) (cleaned up) (emphasis omitted).

Excludable time includes, inter alia, any period of delay which "results from either the unavailability of the defendant or the defendant's attorney or any continuance granted at the request of the defendant or the defendant's attorney." Pa.R.Crim.P. 600, cmt. Moreover, after a Rule 600 motion to dismiss is filed, "the time taken for [the court to render a decision] . . . is also excludable." Commonwealth v. Hyland, 875 A.2d 1175, 1191 (Pa. Super. 2005). Further, "periods of judicial delay are excludable from calculations

_____

under Rule 600." Commonwealth v. Mills, 162 A.3d 326, 325 (Pa. 2017). Excusable delay, on the other hand, "is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence." Commonwealth v. Colon, 87 A.3d 352, 357 (Pa. Super. 2014).

> Due-diligence is a fact-specific concept that is determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Judicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of 'scheduling difficulties and the like.'

Commonwealth v. Lynch, 57 A.3d 120, 124 (Pa. Super. 2012), appeal denied, 63 A.3d 1245 (Pa. 2013) (internal citations and quotations omitted).

Herein, the Commonwealth filed two criminal complaints (Docket Number 5246-2016 and Docket Number 5247-2017) against Appellant on October 28, 2016. As such, the mechanical run date in this case is October 30, 2017. See 1 Pa.C.S.A. § 1908 ("Whenever the last day of any [period referenced in a rule or statute] shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."). We must, however, "account for any 'excludable time' and 'excusable delay'" to derive the adjusted run date. Colon, 87 A.3d at 357. Upon review, we conclude that Appellant caused the following periods of delay: March 20, 2017 to July 6, 2017 (continuance of trial granted to allow Appellant to file pre-trial motions); September 26, 2017 to May 18, 2018 (continuance of trial granted to allow Appellant to file pre-trial motions, including Appellant's omnibus pre-trial motion containing a motion to dismiss pursuant to Pa.R.Crim.P. 600; trial court's deliberation over Appellant's motion to dismiss); July 30, 2018 to November 20, 2018 (multiple continuances of trial granted at Appellant's request); and January 16, 2019 to April 1, 2019 (continuance of trial granted at Appellant's request). A total of 530 days are attributable to Appellant and, as such, the aforementioned periods are excludable. Thus, adding only the excludable time to the mechanical run date, the final run date is, at the earliest, April 13, 2019 – 13 days after Appellant's trial commenced. Hence, the trial court properly denied Appellant's Rule 600 motion.

Because each of Appellant's issues are waived, we affirm his judgment
of sentence.

Judgement of sentence affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/08/2021

---

[14] We note that all of the transcripts included in the certified record were
produced upon a specific request reflected in the trial court dockets. Upon
review, however, the trial court dockets do not show that a request was made
for the transcripts of the May 17, 2018 hearing and there are no transcripts
from that hearing in the certified record. The Superior Court's prothonotary
made an informal inquiry into the whereabouts for the May 17, 2018 hearing
transcripts, but was unable to determine its location. As such, we are
constrained to conclude that the transcripts are missing from the certified
record and, as such, do not exist for purposes of this appeal, even though the
trial court made reference to the transcripts from the May 17, 2020 hearing
in its Rule 1925(a) opinion.

Filed 3/16/2020 1:53:00 PM Superior Court Western District
1179 WDA 2019

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA     )
                                         )     NO.    255 C 2017
               VS.                     )               5246 C 2016
                                           )               5247 C 2016
DARELL DEISEAN WALKER,             )
                 Defendant.       )

**OPINION AND ORDER OF COURT
ISSUED PURSUANT TO PA.R.A.P. RULE 1925(A)**

The defendant, Darell Deisean Walker, appeals from the judgment of sentence entered

July 2, 2019, wherein he was sentenced to an aggregate sentence of eight and one half (8 ½ ) to

seventeen (17) years incarceration followed by five (5) years probation. This Opinion is issued in

compliance with Pa.R.A.P. Rule 1925.

**FACTUAL HISTORY**

The instant matter first arose out of an investigation into the whereabouts of minor,

Karizma Burton, who was alleged to have run away from her residence. As a result of that

investigation, a subsequent investigation led police to uncover allegations of sexual offenses

between the defendant, Darell Deisean Walker ("Mr. Walker") and minor victims, Karizma

Burton and Americus Dillon in Westmoreland County[1]. During trial, Detective Sergeant John

Swank of the Greensburg Police Department testified relative to his involvement with these

investigations. (Trial Transcript "TT" 4/1/19-4/4/19 at 381). Detective Swank testified that on

October 18, 2016, he was notified of a reported runaway of Ms. Burton. (TT at 382). Detective

Swank testified that he visited Greensburg Salem Middle School, in which Ms. Burton was

enrolled at and met with Principal, Adam Jones. (TT at 383). Together, Detective Swank and

Principal Jones conducted interviews with other students that Ms. Burton had socialized with,

---

[1] Mr. Walker was also charged at case number 253 C 2017 involving minor, Katherine Saluga.

1

including Ms. Burton's sister Dymonde Burton. (TT at 383). Through their interviews, they learned that Ms. Burton had been socializing with and was seen entering the vehicle of a black male who was operating a red vehicle, named Darell. (TT at 383-384). According to Detective Swank, Principal Jones accessed Ms. Burton's Facebook account and identified Mr. Walker as the possible person that Ms. Burton may have been talking with. (TT at 384). Both Dymonde and fellow student, Americus Dillon confirmed that Mr. Walker was the individual that they saw Ms. Burton with. (TT at 384). After obtaining an address from Mr. Walker's driver's license, Detective Swank went to the Eastmont Estates in Greensburg and was met by Mr. Walker's mother, Junita Walker. (TT at 385). Ms. Walker allegedly informed Detective Swank that her son was living in Youngwood at that time and working at the Dollar General. (TT at 385). Ms. Walker then called her son, and it is alleged that Mr. Walker initially reported to Detective Swank that although he knew Ms. Burton, he had not seen her for several months. (TT at 386-387). Detective Swank then went to the Dollar General where Mr. Walker was working and requested him to come outside and speak with him. (TT at 386). Detective Swank testified that eventually Mr. Walker admitted that he had seen Ms. Burton within the past couple weeks, and she had been inside his vehicle. (TT at 386-387).

After obtaining additional information, Detective Swank returned to the Dollar General and asked Mr. Walker if he would once again come outside and talk. (TT at 389). Detective Swank testified that he informed Mr. Walker about the Facebook messages between him and Ms. Burton and also told Mr. Walker that you know Ms. Burton is only 13 years old, to which Mr. Walker allegedly responded I know, but that nothing happened. (TT at 389). Detective Swank testified that eventually Mr. Walker made an admission that Ms. Burton had performed oral sex on him in his vehicle in an alley behind her residence. (TT at 389). Mr. Walker was

2

subsequently arrested, and charges were filed in relation to his involvement with Ms. Burton. (TT at 390). On cross-examination, Detective Swank testified that when he went to the Dollar General to speak with Mr. Walker, he did not inform Mr. Walker of his Miranda rights because he was not under arrest at that time. (TT at 419-420).

Subsequently, on November 8, 2016, Detective Swank testified that he was contacted by Detective James Williams from the Westmoreland County District Attorney's Office. (TT at 400). According to Detective Swank, Detective Williams advised him that he had information via Mr. Walker's cellmate, Jared Letosky, regarding additional victims of Mr. Walker, including Ms. Dillon who was 14 years old. (TT at 400-401). After speaking with Ms. Dillon, Detective Swank filed additional charges against Mr. Walker. (TT at 404). At trial, Mr. Letosky confirmed that he was cellmates with Mr. Walker in October 2016, and he testified that he observed Mr. Walker writing him a letter detailing the sexual encounters. (TT at 165-175). Specifically, Mr. Letosky testified that the letter included the specific names and the ages of the girls in which Mr. Walker alleged to have sexual encounters with involving the above-referenced cases. (TT at 173-174); *See Commonwealth's Exhibits Two and Three.*

During trial, both Ms. Burton and Ms. Dillon testified regarding their involvement with Mr. Walker. Ms. Burton testified that in the fall of 2016, she was thirteen years old, and she lived in Greensburg with her mother, her mother's boyfriend, and her sisters. (TT at 63-64). Ms. Burton stated that in 2016, she received a friend request from Mr. Walker on Instagram, and after accepting it, she and Mr. Walker began talking. (TT at 67-68). Ms. Burton testified that on one occasion in the fall of 2016[2] when Ms. Burton was still 13 years old, she asked Mr. Walker to come over to her house. (TT at 70). Ms. Burton alleged that Mr. Walker drove to her house,

[2] Commonwealth's Exhibit One consists of messages exchanged between Mr. Walker and Ms. Burton via Facebook messenger between September 21, 2016 and October 8, 2016.

3

and they had vaginal sex in Mr. Walker's vehicle which was parked in the alley behind her house. (TT at 70-71). Ms. Burton stated that she remembered Mr. Walker put his penis in her vagina, and then Mr. Walker put his penis in Ms. Burton's mouth before ejaculating. (TT at 73). On a second occasion in the fall of 2016, Ms. Burton testified that she asked Mr. Walker to come over to her house, and they had vaginal intercourse in her bathroom. (TT at 74). Ms. Burton testified that the night before she ran away from home, Mr. Walker came over, gave her weed, and Mr. Walker put his penis in her mouth, and she performed oral sex. (TT at 76). Ms. Burton confirmed that the messages that she exchanged with Mr. Walker all occurred when she was thirteen years old. (TT at 114).

Ms. Dillon also testified at trial regarding her involvement with Mr. Walker. Ms. Dillon testified that in the summer of 2016, she was 14 years old and lived in Greensburg with her mother, her mother's boyfriend, and her brother. (TT at 222-223). Ms. Dillon testified that she met Mr. Walker through her ex-boyfriend, Davis Shields. (TT at 223). Ms. Dillon testified that she and Mr. Walker began texting back and forth. (TT at 226). On one occasion, Ms. Dillon testified that she performed oral sex on Mr. Walker, and they engaged in vaginal sex in Mr. Walker's vehicle which was parked in the alley in the back of her house. (TT at 226-228). Ms. Dillon also testified that on a different occasion, she had similar contact with Mr. Walker at Mr. Walker's home. (TT at 228-229).

Mr. Walker also elected to testify at trial. Mr. Walker testified that he met Ms. Burton on Instagram when he sent her a friend request. (TT at 435-436). Mr. Walker stated that when he first started talking to Ms. Burton, Ms. Burton told him she was 18 years old. (TT at 438). Mr. Walker testified that they began to talk on Facebook, and then they eventually met in person in 2016. (TT at 438-439). During their first in-person encounter, Mr. Walker testified that Ms.

4

Burton invited him over and they watched a movie for a little bit, and then he left. (TT at 438). On the second occasion, Mr. Walker testified that Ms. Burton came to his car and while they were in his car, Ms. Burton performed oral sex on him and they ended up having sexual intercourse. (TT at 438-439). On the third occasion, Mr. Walker stated that he and Ms. Burton had sexual intercourse in Ms. Burton's bathroom. (TT at 439). Mr. Walker testified that he was unaware that Ms. Burton was an underage minor until after these encounters occurred and he learned that she was missing. (TT at 440). Mr. Walker indicated that he met Ms. Dillon in person though his friend, David. (TT at 441). Mr. Walker testified that he did not have any idea how old Ms. Dillon was, but he had no reason to believe that she was underage. (TT at 441). Mr. Walker testified that on the first occasion that he met with Ms. Dillon alone, he went to Ms. Dillon's home and she got into his car and they had sexual intercourse. (TT at 442). On two other occasions, Mr. Walker stated that Ms. Dillon invited him over to her grandma's house and then Ms. Dillon's house in Greensburg. (TT at 443). Mr. Walker testified that all of these events occurred in 2016 when he was twenty years old. (TT at 443, 472).

## PROCEDURAL HISTORY

On October 18, 2016, a Criminal Complaint was filed against Mr. Walker at Case Number 5247 C 2016, charging him with Unlawful Contact with Karizma Burton, a Minor; Corruption of Minors; Possession of a Small Amount of Marijuana; and Possession of Drug Paraphernalia. On October 20, 2016, a subsequent Criminal Complaint was filed against Mr. Walker at Case Number 5246 C 2016, charging him with Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault, Indecent Assault, and Statutory Sexual Assault (4-8 Years Older) of victim Karizma Burton. On November 14, 2016, a Criminal Complaint was filed against Mr. Walker at Case Number 255 C 2017, charging him with three counts of

5

Statutory Sexual Assault (4-8 Years Older) in relation to victim Americus Dillon and one count of Corruption of Minors. On December 28, 2017, Mr. Walker filed an Omnibus Pre-Trial Motion including a Motion for Rule 600 Relief and a Motion to Suppress. Both Motions were denied by the Court following at hearing on May 17, 2018.

On April 1, 2019, Mr. Walker proceeded to a jury trial before this Court. During trial, Mr. Walker was represented by Attorney Timothy Dawson. On April 4, 2019, the jury returned a verdict of guilty of all counts at the above-referenced case numbers.[3] On July 2, 2019, Mr. Walker was sentenced as follows: At Case Number 5246 C 2016, Mr. Walker was sentenced at Count One to serve six (6) to twelve (12) years incarceration at a state correctional institution; at Count Two, Mr. Walker was sentenced to serve two and one half (2 ½) to five (5) years incarceration consecutive to Count One followed by five (5) years consecutive probation; at Count Three, Mr. Walker was sentenced to serve twelve (12) months probation concurrent to Count One; and at Count Four, Mr. Walker was sentenced to serve one (1) to two (2) years incarceration concurrent to Count One. At Case Number 5247 C 2016, Mr. Walker was sentenced at Count One to serve six (6) to twelve (12) years incarceration concurrent to Case Number 5246 C 2016; at Count Two, Mr. Walker was sentenced to serve one (1) to two (2) years incarceration concurrent to Count One; at Count Three, Mr. Walker was sentenced to serve thirty (30) days probation concurrent to Count One; and at Count Four, Mr. Walker was sentenced to serve one (1) to two (2) years probation concurrent to Count One. At Case Number 255 C 2017, Mr. Walker was sentenced at Count One to serve one (1) to two (2) years incarceration concurrent to Case Number 5246 C 2016; at Count Two, Mr. Walker was sentenced to serve one (1) to two (2) years incarceration concurrent to Count One; at Count Three, Mr. Walker was

---

[3] Mr. Walker also proceeded to trial at Case Number 253 C 2017 regarding alleged victim, Katherine Saluga. Mr. Walker was acquitted of all of the charges at this case number.

6

sentenced to serve one (1) to two (2) years incarceration concurrent to Count One; and at Count Four, Mr. Walker was sentenced to serve one (1) to two (2) years incarceration concurrent to Count One. Mr. Walker was also subjected to a lifetime registration under SORNA. All sentences imposed by the Court were within the standard range of the sentencing guidelines.

On July 31, 2019, Mr. Walker filed a timely Notice of Appeal to the Pennsylvania Superior Court at the above-referenced case numbers. On August 5, 2019, this Court ordered Mr. Walker to file a Concise Statement of the Errors Complained of on Appeal within twenty-one (21) days. On August 26, 2019, Mr. Walker filed a Motion for Extension of Time to File a Concise Statement of Errors in which he requested a sixty (60) day extension. This Court granted said extension. On October 25, 2019, Mr. Walker filed said statement and raised three issues: (1) Whether the jury's verdicts of guilty for the above-caption case numbers were rendered with sufficient evidence, (2) Whether the trial court erred by denying the defendant's Rule 600 Motion, and (3) Whether the trial court erred by denying the defendant's Motion to Suppress. This appeal is before the Pennsylvania Superior Court at 1177 WDA 2019, 1178 WDA 2019, and 1179 WDA 2019.

## ISSUES PRESENTED ON APPEAL

### 1. WHETHER THE JURY'S VERDICT OF GUILTY FOR THE ABOVE-CAPTIONED MATTERS WERE RENDERED WITH SUFFICIENT EVIDENCE.

Mr. Walker's first allegations of error assert that the jury's verdicts of guilty for the above-captioned matters were rendered with insufficient evidence. Specifically, Mr. Walker alleges that at Case Number 5246 C 2016, the Commonwealth failed to establish the elements of the crimes of Involuntary Deviate Sexual Intercourse, Indecent Assault, Aggravated Indecent Assault, and Statutory Sexual Assault on the dates alleged in the Criminal Information; at Case

7

Number 5247 C 2016, Mr. Walker alleges that the Commonwealth failed to establish the requisite elements of the crimes of Corruption of Minors and Unlawful Contact with a Minor on the dates alleged in the Criminal Information; and at Case Number 255 C 2017, Mr. Walker alleges that the Commonwealth failed to establish the requisite elements of the crimes of Statutory Sexual Assault and Corruption of Minors on the dates alleged in the Criminal Information.

> To evaluate [a] sufficiency of evidence [claim], [a Court] must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.

Commonwealth v. Bundridge, 449 A.2d 681 (Pa. Super. 1982.)

"[W]here there is an insufficiency of evidence determination, the only remedy is the discharge of the defendant for the crime or crimes charged." Commonwealth v. Vogel, 461 A.2d 604 (Pa. 1983.)

Title 18, Section 3123(a)(7) states:

> **Involuntary deviate sexual intercourse.**
>
> **(a) Offense defined.**--A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:
>
> (7) who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

18 Pa.C.S.A. § 3123(a)(7).

Title 18, Section 3125(a)(8) states:

> **Aggravated indecent assault.**
>
> **(a) Offenses defined.**--Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to

8

involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3125(a)(8).

Title 18, Section 3126(a)(8) states:

**Indecent assault.**

**(a) Offense defined.**--A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3126(a)(8).

Title 18, Section 3122.1(a)(1) states:

**Statutory sexual assault.**

**(a) Felony of the second degree.**--Except as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant to whom the person is not married who is under the age of 16 years and that person is:

(1) four years older but less than eight years older than the complainant.

18 Pa.C.S.A. § 3122.1(a)(1).

Title 18, Section 6318(a)(1) states:

**Unlawful contact with minor.**

9

**(a) Offense defined.**--A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S.A. § 6318(a)(1).

Title 18, Section 6301(a)(1)(ii) states:

**Corruption of minors.**

**(a) Offense defined.—**

(1) (ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S.A. § 6301(a)(1)(ii).

This Court, having reviewed the entire record in this case and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, finds that the Commonwealth has presented sufficient evidence to permit the jury, as trier of the facts, to find Mr. Walker guilty of all of the relevant charges. Although Mr. Walker does not specifically allege which elements of each crime he believes have not been proven by the Commonwealth beyond a reasonable doubt, it is the opinion of this Court that the facts concerning the sexual acts between Mr. Walker and both Ms. Burton and Ms. Dillon in 2016 are largely undisputed. During trial, both Ms. Burton and Ms. Dillon testified that they had both vaginal and oral sex with Mr. Walker in 2016. Mr. Walker's testimony confirms that he in fact engaged in sexual acts with Ms. Burton and Ms. Dillon. The issue that appears to arise concerns the age of the parties involved.

10

Testimony at trial revealed that at all relevant times, Ms. Burton was 13 years old, Ms. Dillon was 14 years old, and Mr. Walker was 20 years old when these sexual acts occurred. No testimony was presented to establish that any party was married.

Mr. Walker contends that Ms. Burton informed him that she was 18 years old in 2016. Contrary to Mr. Walker's testimony, the testimony of Commonwealth's witness Detective Swank and Mr. Letosky reveal that Mr. Walker was aware that Ms. Burton was only 13 years old at the time of the sexual conduct. Further, despite Mr. Walker's testimony, the Court finds that mistake of age when a person is less than 14 years of age is not a defense to any of the charges at Case Number 5246 C 2016. During the points of charge, the Court specifically instructed the jurors for each offense under Case Number 5246 C 2016 to the following:

> Except as otherwise provided, whenever in this chapter the criminality of conduct depends on a child being below the age of 14 years, it is no defense that the defendant did not know the age of the child or reasonably believed the child to be the age of 14 years or older.

PA-JICRIM 15.3123D, 15.3125D, 15.3126D, 15.3122.1,Pa.SSJI (Crim), (2016).

At Case Number 5247 C 2017, Mr. Walker was charged with Unlawful Contact with Ms. Burton and Corruption of Minors. Upon a review of the evidence presented by the Commonwealth at trial, the Court finds that there was sufficient evidence for the jury to find that Mr. Walker and Ms. Burton were in contact for the purpose of engaging in sexual acts. Both Ms. Burton and Mr. Walker testified that they used social media to talk to each other, and both parties indicated that sexual acts occurred between them as a result. As stated above, the testimony from Detective Swank and Mr. Letosky disclosed that Mr. Walker was aware that Ms. Burton was only 13 years old at the time of the sexual conduct. Testimony revealed that Mr. Walker was above the age of 18 when he engaged in sexual contact with Ms. Burton.

11

At Case Number 255 C 2017, Mr. Walker was charged with offenses in relation to Ms. Dillon. Testimony from both Mr. Walker and Ms. Dillon revealed that they engaged in sexual intercourse on repeated occasions in 2016, and there was no testimony presented to establish that the parties were married. Contrary to Mr. Walker's testimony, Mr. Letosky's testimony, as well as Commonwealth's Exhibits Two and Three reveal that Mr. Walker was aware that Ms. Dillon was 14 years old at the time of the sexual interactions.

During the points of charge, the Court specifically instructed the jurors to the following regarding the offenses of Statutory Sexual Assault:

> The fact that a defendant did not know the age of a child, or that a child lied about his or her age, or that a defendant *honestly*, but unreasonably, believed that a child was 16 or older would not by itself be a defense to statutory sexual assault. It is a defense, however, if a defendant, even though mistaken about a child's age, *reasonably* believed that the child was 16 or older. A defendant has the burden of proving this defense by a preponderance of the evidence, that is, the greater weight of the evidence. This means that you cannot find the defendant guilty if you are satisfied by a preponderance of the evidence that the defendant believed the child was 16 or older and that the defendant's belief was reasonable under the circumstances.

PA-JICRIM 15.3122.1, Pa.SSJI (Crim), (2016).

It is the opinion of this Court that the Commonwealth presented sufficient evidence for the jury to conclude that Mr. Walker either knew Ms. Dillon's age or his belief that she was older was unreasonable.

Additionally, based on Ms. Dillon's testimony as stated above, the Court finds that Mr. Walker's actions in engaging in repeated sexual conduct with Ms. Dillon, satisfies the requisite elements for corrupting the morals of a minor. Based upon the evidence presented and viewing the evidence in the light most favorable to the Commonwealth, it is the opinion of this Court that the Commonwealth elicited

12

sufficient details concerning the sexual encounters from Ms. Burton and Ms. Dillon at the time of trial from which the jury could have found Mr. Walker guilty beyond a reasonable doubt of all charges.

## 2. WHETHER THE COURT OF COMMON PLEAS ERRED IN DENYING THE DEFENDANT'S RULE 600 MOTION.

Mr. Walker's second allegations of error assert that the trial court erred by denying his Rule 600 Motion on May 17, 2018[4] thereby violating his speedy trial rights. Mr. Walker alleges that the charges should have been dismissed with prejudice.

Pennsylvania Rule of Criminal Procedure 600: Prompt Trial states:

(B) PRETRIAL INCARCERATION

Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of

(1) 180 days from the date on which the complaint is filed

(C) COMPUTATION OF TIME

(2) For purposes of paragraph (B), only periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration. Any other periods of delay shall be included in the computation.

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the

---

[4] In Mr. Walker's Concise Statement of Matters Complained of on Appeal, he references to the Court Order dated, "May 18, 2018." For purposes of clarification, the Court Order denying Mr. Walker's Rule 600 and Suppression Motions was dated "May 17, 2018."

13

computation of the time within which trial must commence in accordance with this rule.

(b) The determination of the judge or issuing authority is subject to review as provided in paragraph (D)(3).

(D) REMEDIES

(2) Except in cases in which the defendant is not entitled to release on bail as provided by law, when a defendant is held in pretrial incarceration beyond the time set forth in paragraph (B), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the defendant be released immediately on nominal bail subject to any nonmonetary conditions of bail imposed by the court as permitted by law. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa. R. Crim. P. 600.

If a defendant[] [is] incarcerated for over 180 days in violation of Rule 600, the proper remedy [is] immediate release on nominal bail, not dismissal. [T]he only occasion requiring dismissal of charges is when the Commonwealth fails to commence trial within 365 days of the filing of the written complaint, taking into account all excludable time and excusable delay.

Commonwealth v. Goldman, 70 A.3d 874 (Pa. Super. 2013);

Upon a review of the criminal court dockets at the above-referenced case numbers, it appears to this Court that on December 28, 2017, Mr. Walker, through counsel, filed a Motion for Rule 600 Relief. In the Motion, Mr. Walker sought (1) dismissal of all of the charges or (2) nominal bond on all the pending cases for the reason that he was incarcerated for a period in excess of 180 days. A hearing was held before this Court on May 17, 2018. Although it is the opinion of this Court that this issue is technically moot, this Court is of the opinion that Mr. Walker's Rule 600 has not been violated.

During the May 17, 2018 Hearing, the Court held that:

[E]ven though there may be some argument that [Mr. Walker has] been [incarcerated] longer than 180 days on [the] two [2016] cases, I'm still going to deny the motion on the basis of community protection. I'm denying the

14

motion of that basis...On the 2017 cases, my calculation, the fact that all four cases were consolidated. The most recent complaint was filed on December 15th of 2016, I don't think either one of those, especially that case, is even close to 180 days on rule 600 because of defense continuances. So I'm going to deny the motions on both the 2017 cases on that [basis]. So the Rule 600 is denied for the reasons stated in the record.

(N.T. 5/17/18 at 56).

It is the opinion of this Court that Mr. Walker was not entitled to an outright dismissal of the charges. Although Mr. Walker may have been released on nominal bond for the two 2016 cases, it is the opinion of this Court that based upon the allegations as set forth in the Criminal Complaints, Mr. Walker would have posed a threat to the safety of the community had he been released. Further, it is the opinion of this Court that had this Court granted nominal bond or a conditional bond to Mr. Walker on the 2016 cases, Mr. Walker would still be detained on the 2017 cases as he was not entitled to such relief on those cases.

## 3. WHETHER THE COURT OF COMMON PLEAS ERRED IN DENYING THE DEFENDANT'S SUPPRESSION MOTION.

Mr. Walker's third allegations of error assert that the trial court erred by failing to suppress his incriminating statements to detectives at Case Number 5246 C 2016 on May 17, 2018.

> The overlying test to determine whether a person is being subjected to a custodial interrogation necessitating Miranda warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. The factors that the court considers to determine whether there has been a custodial interrogation include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

Commonwealth v. Turner, 772 A.2d 970 (Pa. Super. 2001).

15

"[T]he mere fact that [a] police investigation has focused on a particular person will not require Miranda warnings before police interviews with that person." Commonwealth v. Anderson, 385 A.2d 365 (Pa. Super. 1978).

Upon a review of the testimony at the Omnibus Pre-Trial Motion Hearing, the Court finds that despite Mr. Walker's contention that his incriminating statements were obtained in violation of his Miranda rights, Mr. Walker was not subjected to a custodial interrogation and thus Miranda warnings were not required. Mr. Walker voluntary spoke with Detective Swank outside of his place of employment and was interviewed during the normal course of an investigatory fact-finding process in regard to the disappearance of Ms. Burton. Prior to making said statements, Mr. Walker was not handcuffed or placed under arrest. Further, the detectives did not give him any other reason to suspect that he was not free to leave or terminate the interaction with the detectives. As Detective Swank ceased all questioning after Mr. Walker voluntarily made an admission that he had oral sex with Ms. Burton, the Court finds that said statement(s) was admissible at trial.

For the foregoing reasons, the issues raised on appeal are meritless, and the Court enters the following Order:

16

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA    )
                                   )      NO.    255 C 2017
         VS.                    )             5246 C 2016
                                    )             5247 C 2016
DARELL DEISEAN WALKER,          )
                Defendant.     )

## ORDER OF COURT

AND Now, to wit, this 4th day of November, 2019, it is hereby ORDERED, ADJUDGED

and DECREED that the foregoing Opinion shall constitute the Court's brief statement of reasons

for the July 2, 2019 Judgment of Sentence and the May 17, 2018 Order of Court, pursuant to Pa.

R.A.P. 1925.

BY THE COURT:

_____, J

Christopher A. Feliciani, Judge

**ATTEST:**

_____

Clerk of Courts

cc:    File
        Judith Petrush, Esq. –Assistant District Attorney
        Timothy Dawson, Esq. – Counsel for the Defendant
        Pamela Neiderheiser, Esq., Court Administrator's Office
        Law Clerk

17